## CARTER v. DANIEL et al. (No. 1241.)

(Court of Civil Appeals of Texas. Beaumont. May 12, 1925.)

1. **Evidence ☜598(1)—Jury not compelled to accept one witness' testimony irrespective of rest.**

Jury is not compelled to accept testimony of one witness, and disregard all other testimony contradictory to his.

2. **Evidence ☜271(18), 318(5)—Admission of written receipt, executed during trial, showing payment on which cause of action depended, not objectionable as hearsay or self-serving.**

In action to recover loan which was to become due on satisfaction by plaintiff of a judgment against him, superseded by bond on which one defendant was surety, receipt evidencing payment of such judgment, though executed while trial of present case was in progress, *held* not objectionable as hearsay or self-serving declaration.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Russ Daniel against S. F. Carter and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

Maurice Epstein, of Houston, for appellant. Woods, King & John and John M. Cobb, all of Houston, for appellees.

HIGHTOWER, C. J. This suit was filed in one of the district courts of Harris county by the appellee, Russ Daniel, as plaintiff, against J. L. Tryon and S. F. Carter, Jr., who at the time of the transactions involved were partners and doing business in the city of Houston, Harris county, under the firm name of Tryon & Carter.

For cause of action, the plaintiff alleged, substantially, the following: That on or about the 10th day of March, 1919, the defendants, as a firm, were indebted to the Sour Lake Lumber Company of Hardin county, also a partnership, in the sum of $1,200, according to the statements and representations made to plaintiff by defendants, and that at the same time the Sour Lake Lumber Company was indebted to plaintiff in the sum of $1,200, and that it was then mutually agreed by and between the plaintiff and the Sour Lake Lumber Company and the defendants that plaintiff should credit the Sour Lake Lumber Company with the amount of its indebtedness to him, to wit, $1,200, and that the Sour Lake Lumber Company should also credit Tryon & Carter with the amount that that firm then admitted they were indebted to the Sour Lake Lumber Company, to wit, $1,200, and that Tryon & Carter should pay to plaintiff the full sum of $1,200, and that Tryon & Carter, by such agreement, jointly and severally bound themselves to pay to plaintiff the sum of $1,200, in consid-

---

eration of the Sour Lake Lumber Company's releasing and relieving Tryon & Carter from the payment of $1,200 that that firm owed the Sour Lake Lumber Company; that plaintiff, acting and relying upon the agreement of Tryon & Carter to pay to him the sum of $1,200, released the Sour Lake Lumber Company from further liability to him, and the Sour Lake Lumber Company, in consideration of Tryon & Carter's promise to pay to plaintiff the sum of $1,200, released Tryon & Carter from the payment of the sum of $1,200 due the Sour Lake Lumber Company; that the defendant J. L. Tryon had signed a supersedeas bond for plaintiff, who had appealed from a money judgment against him in a certain cause, and that plaintiff, desiring to protect the said Tryon against any loss on account of the bond, suggested to Tryon that the firm of Tryon & Carter borrow from him the sum of $1,200 and retain and use same until Tryon was discharged and relieved from liability on account of the bond, and that this suggestion was accepted and agreed to by Tryon and by Carter, and that it was then agreed between Tryon & Carter and plaintiff that they would borrow the sum of $1,200 from plaintiff, and would retain and use that money until Tryon was relieved from liability on account of said bond, and that said defendants were to pay interest to plaintiff on said sum of $1,200 from the date of said agreement at the rate of 8 per cent, per annum; that on or about December 1, 1920, plaintiff paid off the money judgment in the case in which Tryon was on the supersedeas bond, and that Tryon was then and thereby fully released and discharged from all liability as a surety for plaintiff on said supersedeas bond; that thereafter, within a few days, plaintiff made demand upon defendants for the payment of said sum of $1,200 and interest, but that defendants failed and refused to pay plaintiff said money or any part thereof.

The defendant Tryon answered and admitted that the material allegations in plaintiff's petition were true. The defendant S. F. Carter, Jr., answered, interposing a general demurrer and a number of special exceptions to the plaintiff's petition, none of which are before us, a general denial, and specially denied the agreement alleged in plaintiff's petition, and also specially denied that his partner, Tryon, had any authority to make such agreement for him, if, in fact, Tryon had made such agreement with the plaintiff, and interposed other matters by his answer unnecessary here to mention.

By supplemental petition, plaintiff reiterated, substantially, what he had alleged in his main petition, and then further alleged, substantially, that if, in fact, the firm of Tryon & Carter was not indebted to the Sour Lake Lumber Company in the sum of $1,200 at the time of the agreement alleged in plaintiff's petition, that, nevertheless, both members of said firm represented to plaintiff that said firm was so indebted to the Sour Lake Lumber Company in the full sum of $1,200, and that plaintiff believed such representations and statements, and relied upon same in good faith, and was induced thereby to release the Sour Lake Lumber Company from the payment of the $1,200 which that company owed to plaintiff, and that the defendant Carter was estopped to deny liability for himself or his said firm to the Sour Lake Lumber Company in the sum of $1,200 at the time of the making of such agreement, and also estopped to deny liability to plaintiff by reason of such representations, etc.

The case was tried with a jury, whose verdict consisted of answers to special issues; such answers, as far as necessary to be here shown, being, in substance, as follows:

(a) That the firm of Tryon & Carter agreed to pay to Daniel, when Tryon should be relieved of liability on the supersedeas bond he had signed for Daniel, the sum of $1,200, with interest thereon from the date of such agreement: (b) That Daniel in good faith relied on said agreement, and released the Sour Lake Lumber Company from the payment of $1,200 to him. (c) That Tryon & Carter represented to Daniel that that firm was indebted to the Sour Lake Lumber Company, as alleged by plaintiff, in the sum of $1,200, at the time of the agreement between the parties, and that Daniel, in good faith, relied upon such representation. (d) That Daniel had paid the judgment against him in the case in which Tryon was a surety on the supersedeas bond, and that such payment was made December 7, 1920.

Upon the verdict of the jury, the district judge rendered judgment in favor of the plaintiff, Daniel, against both Tryon and Carter, jointly and severally, in the sum of $1,536, this amount representing the principal sum of $1,200 claimed by the plaintiff, with interest thereon at the rate of 6 per cent. per annum from date of the agreement between the parties, and from this judgment defendant Carter alone has prosecuted this appeal.

[1] Two points or propositions are advanced by brief of counsel for appellant upon which a reversal of the trial court's judgment is prayed. The first point is that the evidence adduced upon the trial showed without contradiction that no such agreement as plaintiff alleged in his petition was ever made between plaintiff and the firm of Tryon & Carter, or either of them, and the Sour Lake Lumber Company, and therefore there could be no recovery in favor of the plaintiff in any amount. Upon this proposition we have searched the record in the case carefully, and have reached the conclusion that counsel for appellant is wrong in his contention on this point. We think that the evidence in favor of plaintiff touching the claimed agreement was amply sufficient to warrant the jury's verdict as we have stated it. It is

273 S.W.—44

true that, according to Mr. Carter's testimony no such agreement as alleged by the plaintiff was ever made by him or by any one acting with his authority, but the jury was not compelled to accept Mr. Carter's testimony and disregard all other testimony contradictory of his. It is the custom of this court, when we affirm a judgment or verdict of a jury on fact issues, to merely state our conclusions touching such issues, and we do not go into a discussion of the evidence to sustain such verdict.

[2] The second point advanced for reversal is based upon the ruling of the trial court in admitting in evidence, over appellant's objection, a written receipt signed by C. W. Howth, Esq., who was attorney of record for the plaintiff in the suit against Daniel, in which judgment was rendered in favor of the plaintiff, and which Daniel superseded by filing the supersedeas bond on which J. L. Tryon was a surety, showing that Daniel paid off in full the money judgment against him in that case on December 7, 1920. This receipt was executed by Mr. Howth on December 18, 1923, while the trial of this case was in progress; and the objection interposed by appellant to its admission was, in substance, that it was incompetent and immaterial to any issue in the case, and further that it was hearsay and a self-serving declaration. None of these objections were tenable, we think. When Daniel paid off the judgment in the case in which Tryon was a surety on the supersedeas bond, such payment at once discharged Tryon's liability as such surety, and it could make no difference when the plaintiff in that case or his attorney acknowledged the payment of such judgment. Mr. Tryon knew that the judgment had been paid off by Daniel, and never set up any defense in that connection, and Mr. Carter, as shown by this record, did not deny liability to the plaintiff in this case on account of Tryon's not having been released on the supersedeas bond in the other case, but solely on the grounds that the firm of Tryon & Carter was not indebted to the Sour Lake Lumber Company, as claimed by the plaintiff in this case, and further that there was no such agreement between the parties as that alleged by the plaintiff in this case.

The judgment of the trial court is affirmed.